```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                                          :
A.H.,                                                     :
                                                          :
                              Petitioner,                 :
                                                          :         26-CV-869 (VSB)
              - against -                                 :
                                                          :         OPINION & ORDER
                                                          :
PAUL ARTETA, in his official capacity as                  :
Sheriff of Orange County, New York and                    :
Warden of the Orange County Correctional                  :
Facility, et al.,                                         :
                                                          :
                              Respondents.                :
                                                          :
---------------------------------------------------------X
```

Appearances:

Melinda K. Sheild
Alexandra Lampert
Brooklyn Defender Services
Brooklyn, NY
*Counsel for Petitioner*

Janet Lynne Guyon
U.S. Attorney's Office, Department of Justice, SDNY
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

       Before me is A.H.'s[1] ("Petitioner") petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and seeking an order directing the Government to immediately release Petitioner from custody. (Doc. 1 ("Petition" or "Pet.").) Because I find that the Government detained Petitioner

---

[1] On February 2, 2026, I granted Petitioner's motion for leave to proceed under pseudonym. (Doc. 4.)

pursuant to 8 U.S.C. § 1226 and that this detention violated his due process rights, the Petition is GRANTED, and the Government is ordered to immediately release Petitioner from custody.

## I. Factual Background

### A. *Petitioner's Entry Into the United States*

A.H. is a 44-year-old citizen of the Republic of Belarus. (Pet. ¶ 9.) On December 6, 2021, Petitioner entered the United States with his family by crossing the U.S./Mexico border without inspection near San Ysidro, California to seek asylum. (*Id.* ¶¶ 1, 27; Doc. 12-5 at 2.) DHS granted Petitioner and his family parole to come into the United States. (Pet. ¶¶ 1, 9, 27; *see also* Doc. 12-5 at 2 (Form I-213 dated May 30, 2025 indicating that on December 6, 2021, Petitioner was "released on Order of Release on Recognizance"[2]).)

On December 7, 2021, the Department of Homeland Security ("DHS"), served Petitioner with a Notice to Appear ("NTA"), placing him in removal proceedings pursuant to INA § 212(a)(7)(A)(i)(I), and describing him as "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General." (Doc. 11-1 at 4.)

Petitioner's application for asylum, withholding of removal, and protection under the Convention Against Torture remains pending. (Pet. ¶¶ 1, 9.) On September 8, 2025, while Petitioner was detained, *see infra* Part I.B, an immigration judge ("IJ") granted his application for withholding of removal but denied his application for asylum. (*Id.* ¶¶ 3–5.) DHS did not appeal the IJ's grant of the withholding of removal. (*Id.* ¶ 3.) Petitioner timely appealed the IJ's denial

---

[2] Neither party filed the December 6, 2021 Order of Release on Recognizance.

of his application for asylum to the Board of Immigration Appeals, which is still pending and thus, the IJ's order is not final.  (*Id.* ¶¶ 5, 9.)

### B.     *Petitioner's Detention*

Petitioner "came to the attention of ICE following his arrest" by the New York City Police Department on April 19, 2025 for (i) Attempted Criminal Contempt-1st Degree: Violate Order of Protection (NY Penal Law 215.51) and (ii) Attempted Assault-3rd Degree: With Intent to Cause Physical Injury (NY Penal Law 120.00)—both misdemeanors.[3]  (Doc. 12 at 1; Doc. 12-4.)  ICE lodged a detainer related to that arrest.  (Doc. 12 at 1.)

On May 30, 2025, A.H. reported for a routine scheduled check-in at 26 Federal Plaza.  (Pet. ¶¶ 2, 28.)  At the check-in, ICE arrested Petitioner, without notice or opportunity to contest his detention, and transported him to Orange County Correctional Facility, where he is currently detained without receiving a bond hearing or any individualized custody determination.  (*Id.* ¶¶ 2, 7, 9, 28, 67, 70.)  Prior to his detention, Petitioner attended numerous appointments with ICE and was even wearing an electronic GPS ankle monitor at the time of his detention.  (*Id.* ¶ 1.)

DHS issued two arrest warrants[4] related to Petitioner:  one on May 30, 2025; and the other on June 3, 2025, both citing INA § 236—codified as 8 U.S.C. § 1226—as the basis for the warrants.[5]  (Doc. 12-1.)  On June 3, 2025, DHS also served a Notice of Custody Determination on Petitioner, indicating that Petitioner was detained "[p]ursuant to the authority contained in section 236."  (Doc. 8-1 at 2.)

---

[3] The criminal case "has since been resolved."  (Doc. 14 ("Reply") at 4.)

[4] The Government explained that "ICE initially served Petitioner with a Warrant for Arrest on May 30, 2025.  ICE later served another warrant on Petitioner on June 3, 2025, which checked the box 'the pendency of ongoing removal proceedings against the subject,' which was not checked on the May 30 warrant."  (Doc. 12 at 1; *see also* Doc. 12-1.)

[5] The arrest warrants specifically directs Petitioner's arrest by "[a]ny immigration officer authorized pursuant to section 236 and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations."  (Doc. 12-1.)

3

**II.     Procedural History**

On February 2, 2026 at 2:16 P.M. Eastern Standard Time, Petitioner's counsel filed a petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  (*See* Pet.)  Later on that day, I issued an Order to Show Cause, directing Respondents and Petitioner's counsel to attend an initial telephonic conference on February 6, 2026 to discuss venue and the relevant detention provisions.  (Doc. 5.)  On February 5, 2026, Petitioner filed a letter attaching as an exhibit the following documents:  a Notice to EOIR: Alien Address dated June 3, 2025, a Notice of Custody Determination dated June 3, 2025, and a Warrant for Arrest of Alien dated June 3, 2025 and indicating that it was served on Petitioner on June 4, 2025.  (Docs. 8, 8-1.)

After I held the initial telephonic conference on February 6, 2026, I directed the parties to submit a response to certain questions, including whether the instant Petition could be controlled by my prior opinions in *Sidqui v. Almodovar*, No. 25-CV-9349, 2026 WL 251929 (S.D.N.Y. Jan. 30, 2026) and *Han v. Noem*, No. 25-CV-10753, 2026 WL 322963 (S.D.N.Y. Feb. 6, 2026).  (Doc. 9.)  On February 11, 2026, Petitioner filed a letter in response to my February 6 Order, (Doc. 11), along with several exhibits in support, (Docs. 11-1–11-3).  Petitioner stated that "[t]here is no meaningful basis on which to distinguish this case from [my] prior decisions in *Sidqui* and *Han*, and Petitioner agrees those decisions control the result here."  (Doc. 11 at 4.)  On that same date, the Government filed a letter in response to my February 6 Order, (Doc. 12), along with several exhibits in support, (Docs. 12-1–12-7).  The Government asserts that Petitioner is detained under § 1225(b)(2) and that his detention is mandatory.  (Doc. 12 at 1.)  The Government agreed that my "decision in *Han* would likely govern the statutory issue presented here."  (*Id.* at 2.)  On February 13, 2026, the Government filed an additional letter, noting that "this case is not materially distinguishable from the facts and legal issues presented in

[my] decision in *Han* with respect to the legal question concerning the statutory authority for Petitioner's detention." (Doc. 13 at 1.) The Government also notes that it believes I can resolve this matter without further submission or hearing. (*Id.* at 2.) On February 20, 2026, Petitioner filed a reply in support of the Petition. (*See* Reply.)

Having reviewed the Petition, the materials filed in support thereof, and the parties' further filings, I find that the Petition "present[s] only issues of law," and I thus issue the instant Opinion & Order and adjudicate the Petition without a hearing in light of my obligation to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require." 28 U.S.C. § 2243.

### III.    Legal Standard

A.H. brings his Petition pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-04189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

**IV.    Discussion**

The Government concedes that I "resolved this identical issue in *Han*, and, as noted, the facts in this case are not materially distinguishable on th[e] issue" of the statutory authority for Petitioner's detention and "acknowledges that the *Han* decision would control the result in this case if [I] adhere[] to [my] prior decision." (Doc. 13 at 2; *see also* Doc. 12 at 2 (noting that the "decision in *Han* would likely govern the statutory issue presented here").)  Thus, "while reserving all rights, including the right to appeal, and to conserve judicial resources while expediting [my] consideration of this case, the government . . . rel[ies] upon, and incorporate[s] by reference, the legal arguments it presented in *Han*." (Doc. 13 at 2.)

On February 6, 2026, I issued my decision in *Han*, which decided the same statutory issue raised here.[6]  2026 WL 322963, at *4–7.  My decision in *Han* controls the statutory issue in this case because I adhere to my prior decision regarding the Respondents' statutory authority to detain a petitioner that is living in the United States at the time of detention.  For the reasons stated in *Han* and by several other courts in this District, I conclude that A.H., who has been living in the United States since 2021, was not subject to mandatory detention under 8 U.S.C. § 1225(b), and instead is detained under the discretionary provision of § 1226(a).  *Id.* at *5–7.  I agree with the "overwhelming majority of opinions in this District and others across the country [that] have held that § 1226, not § 1225, governs the process of arresting and detaining noncitizens who are already present in the United States."  *Id.* at *4.  Section 1225(b)(2) applies only to noncitizens actively "seeking admission" to the United States, and not to individuals like A.H. who have already entered and have been residing in the country because he "can't go into a

---

[6] After I held the initial telephonic conference on February 6, 2026, I directed the parties to submit a response to certain questions, including, among other things, whether the instant Petition is controlled by my prior opinion in *Han*, 2026 WL 322963.  (Doc. 9.)

place where [he] already [is]." *Id.* at *5 (alteration in original) (quoting *J.G.O. v. Francis*, No. 25-CV-7233, 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025)). "To assume otherwise would mean that millions of immigrants living in the United States should be mandatorily detained as if they are on the cusp of our nation's borders." *Id.* This is not the case as many, if not all, of these immigrants have been living in the United States, in some cases for many decades. Moreover, "it would be remiss of me to ignore decades of immigration law that has acknowledged the difference between those at the border and those in the interior of the country." *Id.* at *7 (citing *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 490 (S.D.N.Y. 2025)).

Having determined that A.H. is detained pursuant to § 1226(a), I conclude that the Government's detention of A.H., without any individualized consideration, violates his due process rights. Section 1226(a) requires that the Government make an individualized determination based on (1) whether the noncitizen is a "danger to property or persons" and (2) whether the noncitizen is "likely to appear for any future proceeding" before detaining him. 8 C.F.R. § 1236.1(c)(8). Although the Government avers that "this case is different from the others that were before [me] in that Petitioner was arrested and provided with the process afforded under 8 U.S.C. § 1226(a), as his arrest pre-dated ICE's change in policy or the BIA's precedential decision" in *Matter of Yajure Hurtado*, the Government does not even attempt to explain what "process" Petitioner was "afforded under 8 U.S.C. § 1226(a)." (Doc. 13 at 2.) "[T]he record demonstrates that the government did not play by the rules—'treating attendance in immigration court as a game of detention roulette is not consistent with the constitutional guarantee of due process.' Petitioner is entitled to more process than he received." *O.F.B. v. Maldonado*, No. 25-CV-6336, 2025 WL 3277677, at *6 (E.D.N.Y. Nov. 25, 2025) (quoting *Lopez Benitez*, 795 F. Supp. 3d at 499). Accordingly, A.H.'s detention violates his due process

7

rights. *See Han*, 2026 WL 322963, at *7 (determining that the petitioner's due process rights were violated where there was no evidence of an individualized determination prior to detaining the petitioner); *Tejeda-Mata v. Francis*, No. 26-CV-658, 2026 WL 221276, at *2 (S.D.N.Y. Jan. 28, 2026) ("Respondents have violated th[e] fundamental mandate [in the Due Process Clause], as Petitioner has been detained without notice or an opportunity to be heard. The remedy for this violation is release from custody."); *Tumba Huamani v. Francis*, No. 25-CV-8110, 2025 WL 3079014, at *9 (S.D.N.Y. Nov. 4, 2025) (determining that the petitioner's due process rights were violated because she was detained "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond" (internal quotation marks omitted)).

Finally, I decline the Government's request that if I grant the Petition, I "order that a bond hearing be held, not immediate release." (Doc. 13 at 2.) To the extent the Government argues that A.H. was detained as a result of his April 19, 2025 arrest, (Doc. 12 at 1), awareness of the mere existence of an arrest for misdemeanor charges does not satisfy the Due Process requirement of an individualized determination prior to detention. "[T]here is nothing to suggest that DHS exercised any discretion *at all* in detaining" A.H. *Lopez Benitez*, 795 F. Supp. 3d at 494 (emphasis in original). Moreover, the Government has not even attempted to make an argument that Petitioner is a flight risk or danger to the community. (*See* Doc. 12, Doc. 13.) "[A] bond hearing [cannot] retrospectively cure the due process violation, which derived from [Petitioner's] unlawful arrest and detention without the statutorily required exercise of discretion." *Yao v. Almodovar*, No. 25-CV-9982, 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (citing *Tumba Huamani*, 2025 WL 3079014, at *7–9); *see also Ambroladze v. Maldonado*, 26-CV-00474, 2026 WL 280182, at *3 (E.D.N.Y. Feb. 3, 2026) ("[B]ecause the 'typical remedy'

8

for 'unlawful executive detention' is 'of course, release,' the government's ongoing detention of Petitioner, in the face of yet another complete failure of process, entitles him to immediate release." (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008))). Indeed, directing a bond hearing at this juncture, as the Government suggests, would prolong Petitioner's detention—which has already lasted for 9 months—and therefore exacerbate the violation of his due process rights. "[T]he harm began when Petitioner was detained without process and continues with each day he remains in custody." *Han*, 2026 WL 322963, at *8. Thus, the Government must immediately release A.H. from detention.

## V. Conclusion

Therefore, the Petition for a writ of habeas corpus is GRANTED. Respondents are hereby ORDERED to immediately release Petitioner from custody and certify compliance with this order by filing an entry on the docket no later than **5:00 p.m. on February 27, 2026**.

IT IS FURTHER ORDERED that the Order to Show Cause Hearing, currently scheduled for February 27, 2026 be CANCELLED.

IT IS FURTHER ORDERED that Petitioner "shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a)." *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *17 (E.D.N.Y. Oct. 6, 2025). *Cf. Rueda Torres v. Francis*, No. 25-CV-8408, 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025).

IT IS FURTHER ORDERED that the Government is ENJOINED from denying bond to Petitioner in any subsequent proceeding on the basis that he must be detained pursuant to 8

U.S.C. § 1225(b) and from invoking in that proceeding the automatic stay provision at 8 C.F.R. § 1003.19(i)(2), *Rueda Torres*, 2025 WL 3168759, at *6, absent a change in controlling law.

Respondents did not address Petitioner's request for attorney's fees and costs pursuant to the Equal Access to Justice Act as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412 in their Opposition. Thus, if Petitioner still intends on seeking such relief, Petitioner may file a status letter proposing a briefing schedule for any application for attorneys' fees and costs by **April 29, 2026.**

SO ORDERED.

Dated: February 26, 2026
     New York, New York

*[signature]*
Vernon S. Broderick
United States District Judge